## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| RICHMOND AMERICAN HOMES OF UTAH, INC.<br><br>Plaintiff,<br><br>v.<br><br>ALLIANZ GLOBAL CORPORATE & SPECIALTY; THE AMERICAN INSURANCE COMPANY; FIREMAN'S FUND INSURANCE COMPANY; FUSION SIGN AND DESIGN, INC., and Does 1-10.<br><br>Defendants. | **RICHMOND AMERICAN HOMES OF UTAH, INC.'S FIRST AMENDED COMPLAINT AND JURY DEMAND**<br><br>Civil No. 2:18-cv-00635-CW<br><br>Judge:  Clark Waddoups<br><br>**Jury Demanded** |

Plaintiff, Richmond American Homes of Utah, Inc. (hereinafter "Richmond"), by and through its attorneys of Dewhirst & Dolven, LLC, hereby submits this First Amended Complaint, as follows:

### PARTIES, VENUE AND JURISDICTION

1.      Richmond is a Utah corporation registered to do business in Utah with its principal place of business in Salt Lake County, Utah.

2.      Allianz Global Corporate & Specialty ("Allianz Global") is a corporation registered in Germany with its principal place of business in Munich, Germany.

3.      The American Insurance Company ("AIC") is an Illinois corporation with its principal place of business in Chicago, Illinois.

4.     Fireman's Fund Insurance Company ("Fireman's") is a California corporation with its principal place of business in Chicago, Illinois.  (Allianz Global, AIC, and Fireman's will hereafter be collectively referred to as "Allianz").

5.     Fusion Sign and Design, Inc. ("Fusion") is a California corporation with its principal place of business in Riverside, California.  As Named Insured under the below referenced insurance policies, Fusion is an interested party pursuant to 28 US.C. § 2201.

6.     Defendants Does 1-10 are individuals and/or entities whose identities are presently unknown, who may be responsible for Plaintiff Richmond's damages.

7.     This Court has jurisdiction under 28 U.S.C. § 1332(a) because complete diversity exists in this civil action between citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interest and costs.  This Court also has jurisdiction under 28 US.C. §§ 2201(a) and 2202 because Plaintiff seeks declaratory relief concerning an actual controversy within this Court's jurisdiction.

8.     Venue is proper in the District of Utah pursuant to 28 U.S.C. § 1391(b) because substantial part of the events or omissions giving rise to claims occurred in Utah and all Defendants are subject to this Court's personal jurisdiction with respect to this action.

## UNDERLYING LITIGATION

9.     Plaintiff Richmond and Defendant Fusion are named as Defendants in Plaintiffs Jose "Walter" Aguilar and Maria Elena Cirilo's Complaint in the Third Judicial District Court, Case No. 170903060[1] (sometimes referred to as the "underlying matter" or "Underlying

---

[1]     By asserting this Complaint, Richmond does not admit to any allegation set forth in Plaintiffs Aguilar and Cirilo's Complaint.  In referencing, citing, or in any way discussing Aguilar and Cirilo's Complaint within this Complaint, and in otherwise bringing this Complaint, Richmond does not waive any defense or affirmative defense to the allegations in the underlying matter.

Litigation").  A true and correct copy of Plaintiffs' Complaint is attached hereto as **Exhibit A** and is incorporated herein.

10.     Plaintiffs in the Underlying Litigation assert damages due to Mr. Aguilar's injury that allegedly occurred on August 29, 2015.  (**Exhibit A**, Complaint).

11.     Plaintiffs in the Underlying Litigation allege Mr. Aguilar was injured on August 29, 2015 in the course of performing Fusion's work.

## MASTER SUBCONTRACT AGREEMENT

12.     On March 19, 2010, Richmond and Fusion entered into a Master Subcontractor Agreement ("MSA"), legally obligating Fusion to pay for bodily injury to its employees and independent contractors, and to defend and indemnify Richmond.   A copy of the MSA is attached as **Exhibit B**, and incorporated herein by this reference.

13.     The obligations of Fusion under the MSA are as stated therein and in the testimony of Fusion representatives, and include, and are not limited to, Fusion's obligation to defend, indemnify, and hold Richmond harmless per MSA Section 8.3.1, "Damages suffered by Contractor; Indemnification," (emphasis in original):

> *"To the fullest extent permitted by applicable laws, Subcontractor shall indemnify, defend (at Subcontractor's sole cost and with legal counsel satisfactory to Contractor) and hold each Indemnified Party, each Construction Site and each Owner's Property harmless from and against any and all claims arising out of or in any way related directly or indirectly to (A) the Work or Warranty performed by Subcontractor or its Agents, including by way of illustration and not exclusion, any Nonconformance or any breach of any warranty or guarantee given by Subcontractor, (B) Subcontractor's or its Agents' activities conducted on any Construction Site or other Property, whether a Claim arises out of the concurrent act, omission or negligence of such Indemnified Party, whether active or passive, (C) Subcontractor's performance under this Agreement or any Addendum, (D) Subcontractor's failure to perform any duty or obligation under this Agreement or any Addendum or (E) Subcontractor's breach of this Agreement.  Subcontractor's*

> *duty to indemnify, defend and hold each Indemnified Party, each Construction*
> *Site, and each Owner's Property harmless under this Section 8.3 shall include,*
> *by way of illustration and not exclusion, Claims against any Indemnified Party*
> *by which any Person not a party to this Agreement seeks to impose Tort*
> *Liability on any Indemnified Party, Claims arising out of or in any way related*
> *directly or indirectly to any act or omission or negligent conduct whether active*
> *or passive, regardless whether caused in whole or in part by Contractor or its*
> *Agents, any fines or penalties imposed on Contractor and any losses suffered or*
> *damages or Costs incurred by Contractor, whether an Action is or has been*
> *commenced."*

14.     Under the MSA, Section 2.27, the term "Indemnified Party" is defined to include "Contractor, its Affiliates and their respective partners, joint venturers, members, managers, officers, directors, shareholders, employees, agents, representatives, successors, and assigns."

15.     The MSA further includes the following under Section 8.3.2 (emphasis in original):

> "**Contractor and Subcontractor expressly intend that the provisions under Subsection 8.3.1 and any similar provisions in this Agreement or any Addendum shall be interpreted as broadly as possible in favor of Contractor as permitted by applicable Indemnity Law.**"

16.     In addition, Section 8.3.4 of the MSA provides:

> "…Subcontractor's duty to defend the Indemnified Party applies whether or not the issue of Subcontractor's liability, breach of this Agreement or other obligation, or Subcontractor's responsibility has been determined…. Subcontractor's duty to defend the Indemnified Party shall arise immediately upon Subcontractor's actual or constructive notice of a Claim against any Indemnified Party which is or might possibly be covered by Subcontractor's obligations described in this Section 8.3, whether an Action is or has been commenced…."

17.     In addition, the MSA, Section 10.7.4 provides:

> "…Subcontractor represents and warrants to Contractor that Subcontractor is solely liable and solely responsible for the health and safety of its Agents and that Subcontractor possesses the authority, training, competencies, control and means to carry out such responsibility.  Any Costs incurred by Contractor as a result of

> Subcontractor's failure to comply with the provisions of this Section 10.7 shall be immediately due and payable by Subcontractor to Contractor...."

18.    "Agents" is defined in Section 2.4 of the MSA to include employees and sub-subcontractors of the subcontractor Fusion.  "A Sub-subcontractor is an Agent of Subcontractor." *Id.*

19.    The MSA also required Fusion to obtain and maintain, at its sole cost, Workers Compensation Insurance and Commercial General Liability Insurance.  (**Exhibit B**, Section 5.1).

20.    Section 5.4 of the MSA, "Additional insured endorsements," states Fusion was contractually required to add Richmond as an additional insured under a commercial general liability insurance policy.  *Id.* at § 5.4.

21.    The MSA also obligated Fusion to maintain commercial general liability coverage, with Richmond named as an Additional Insured, for at least 10 years following completion of Fusion's work:

> Each policy of insurance carried pursuant to this Agreement shall be satisfactory to Contractor and shall comply with all of the following: . . . **Commercial General Liability Insurance coverage complying fully with this ARTICLE 5.0, including coverage for the Additional Insureds complying fully with Section 5.4 below, shall be maintained in force <u>until the later</u> of** (A) the expiration of Subcontractor's warranties and guarantees, (B) the expiration of the applicable statute of limitations and/or statute of repose for Claims arising out of or in any way related directly or indirectly to any alleged defects in the Work, Warranty Work or construction of improvements on real estate and (C) **ten (10) years following completion of the Work or Warranty Work.**

(**Exhibit B**, MSA at Section 5.2; 5.2.3, emphasis added).

<u>**ALLIANZ POLICIES**</u>

22.     Allianz issued a commercial general liability policy to Fusion, policy number MXX80962144 (the "Policy"), with a Policy Period of May 1, 2015 to May 1, 2016.  A copy of the Policy is attached as **Exhibit K**, and is incorporated herein in its entirety.

23.     The Insuring Agreement of the Policy states:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of **bodily injury** or **property damage** to which this insurance applies. We will have the right and duty to defend the insured against any **suit** seeking those damages.

(**Exhibit K**, Policy, CG 00 01 04 13 Form, § I(A)(1)(a)).

24.     A copy of the Certificate of Liability Insurance is attached as **Exhibit L** ("Certificate"), and incorporated in its entirety by this reference.  According to the Certificate, "MDC Holdings, Inc. and All Richmond American Homes Affiliates are included as Additional Insureds as respects General Liability per attached endorsement."  The Certificate also states "This insurance shall apply as Primary and Non-Contributory . . . ."

25.     Pursuant to the Policy, "Any person or organization is included as an additional insured, but only to the extent such person or organization is legally obligated to pay for **bodily injury, property damage** or **personal and advertising injury** caused by your acts or omissions." (**Exhibit K**, MultiCover CG 71 58 01 14, p. 1).[2]

26.     Alliaz has admitted that "Based upon the allegations of the complaint, it is possible that RAH of Utah may be found liable based upon the acts or omissions of Fusion." (**Exhibit J,** Allianz's letter dated June 8, 2017, referencing the Complaint at **Exhibit A**).

27.     Richmond is an additional insured under the Policy.

---

[2]     Richmond also preserves claims of entitlement to policy benefits under any endorsement specifically naming Richmond as an additional insured.

28.     The Policy states

With respect to the insurance afforded to such additional insured, all of the following additional provisions apply:

(1) You have agreed in a written **insured contract** that such person or organization be added as an additional insured under this policy;
(2) The **bodily injury, property damage** or **personal and advertising injury** for which said person or organization is legally obligated to pay occurs subsequent to the execution of such **insured contract**; . . .
(5) Such person or organization is an additional insured only with respect to . . .
        (b) Your ongoing operations performed for that insured.

(**Exhibit K**, MultiCover CG 71 58 01 14, p. 1).

29.     An "**insured contract**" is defined by the Policy to include:

That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for **bodily injury** or **property damage** to a third person or organization.

(**Exhibit K**, Policy, Section V(9)(f), p. 15).

30.     On March 19, 2010, Fusion executed a written "insured contract," as that term is defined by the Policy, that required that Richmond be added as an additional insured under the Policy, and further, that Fusion agreed within the insured contract that Fusion would maintain a general liability policy, with Richmond's status as additional insured, for ten years following completion of Fusion's work.  (**Exhibit B**, MSA at Sections 5.1; 5.2; 5.2.3).

31.     The bodily injury for which Richmond would be legally obligated to pay is alleged to have occurred during the course of Mr. Aguilar's performance of Fusion's ongoing operations for Richmond on August 29, 2015.  (**Exhibit A**, Complaint).

32.     August 29, 2015, the date of Mr. Aguilar's bodily injury, is a date subsequent to March 19, 2010.

33.     The Policy exclusion entitled "Employer's Liability" at Policy Section I, Coverage A, Exclusion 2(e), "does not apply to liability assumed by the insured under an **insured contract**."  (**Exhibit K**, Policy, § 1(A)(2)(e), p. 3).

34.     The Policy's CGL Coverage Form contains the following provision addressing separation of insureds:

**Separation of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a.      As if each Named Insured were the only Named Insured; and

b.      Separately to each insured against whom claim is made or suit is  brought.

(**Exhibit K**, Policy CG 00 01 04 13 Form, Section IV(7), p. 14).

35.     Allianz owes coverage to Richmond as an insured under the Policy separate from its coverage obligations to Fusion pursuant to the Policy's Separation of Insured provision.

36.     In addition to the above-quoted Policy, Allianz issued an Excess Liability and Umbrella Policy that was effective on August 29, 2015, and states "the terms and conditions of **Primary Insurance** apply to Coverage A."  (**Exhibit M**, "The Fund Umbrella," incorporated herein, in its entirety, by the reference).

37.     "**Primary Policies**" or "**Primary Insurance**" under the Excess and Umbrella Policy, "means the policy or policies of Insurance shown In our Schedule of Primary Insurance." (**Exhibit M**, "The Fund Umbrella" p. 26).

38.     Pursuant to the Schedule of Primary Insurance, "**Primary Insurance**" under the Excess and Umbrella Policy is the Policy attached at **Exhibit K**.

39.     The Excess Policy insures "any person or organization that is an insured in Primary Policies." (**Exhibit M**, p. 6).

40.     Richmond is an insured under the Primary Policy, and is thus an insured under "The Fund Umbrella" Excess and Umbrella Policy and entitled to said policy's benefits.

41.     Alternatively, if Richard is not deemed an additional insured under the Policy's MultiCover Endorsement or other endorsement, Richmond is entitled to primary and excess defense and indemnification coverage under the Policy and The Fund Umbrella based on Section I(A)2.b.(2) of the Policy, the insured contract exception to the Policy's Contractual Liability exclusion. (**Exhibit K,** CG 00 01 04 13 Form, § I(A)2.b.(2), p. 2).

## <u>CONDUCT BY ALLIANZ</u>

42.     Actual and constructive notice of Plaintiff Aguilar's claims was provided by Richmond to Allianz at least by November 2015, in communications between Debbi Kovacs of Richmond and Rick Meyer of Allianz. A copy of written communications between Ms. Kovacs and Mr. Meyer on November 13, 2015, December 9, 2015, and December 29, 2015 is attached as **Exhibit C.**

43.     As reflected in **Exhibit C**, Mr. Meyer, of Allianz, proposed, recommended, and represented the following to Ms. Kovacs in his November 13, 2015 written communication to her:

> "Is there another master agreement that does not contain the one year effective period, or did I misunderstand? If there isn't, and if it is legally viable, I would suggest that MDC and Fusion sign a contract addendum that makes the contract retroactively applicable to March 19, 2011 until canceled, to reflect the intent of the parties. I'm pretty certain Loren Hansen would do this readily."

44.     MDC Holdings, Inc. is the parent company of Richmond.

45.     On November 18, 2015, Richmond again tendered its defense and indemnification of the Underlying Litigation to Allianz and Fusion.  A copy of this November 18, 2015 letter is attached as **Exhibit D**.

46.     Plaintiff Aguilar's lawsuit against Richmond was initially filed in Civil No. 150401595, Fourth Judicial District Court, Utah County, State of Utah.  A copy of this initial Complaint by Plaintiff Aguilar is attached as **Exhibit E**.

47.     On November 24, 2015, in reliance upon the representations of Allianz's agent Mr. Meyers made in his email of November 13, 2015, Fusion and Richmond agreed to, executed and entered an "Addendum to Master Subcontractor Agreement" (hereinafter "Addendum to MSA").  A copy of the Addendum to MSA is attached hereto as **Exhibit F**.

48.     The Addendum to MSA includes the following:

> "This Addendum is an Addendum to and forms part of the Master Subcontractor Agreement entered into by and between Richmond American Construction, Inc. ("Contractor") and Fusion Sign & Design, Inc. ("Subcontractor"), dated March 19, 2010, (the "Agreement"), and is merged into the Agreement by this reference effective as of the Effective Date of the Agreement….

> The Agreement was entered into by and between Richmond American Construction, Inc., on behalf of itself and the Richmond American Homes operating entities ("RAH Operating Entities") listed in Exhibit A, … and Fusion Sign & Design, Inc.  Contractor and the RAH Operating Entities were and remain parties to and beneficiaries under the Agreement.

> **WHEREAS**, the parties have continued and continue to perform under the Agreement from the Effective Date through the date of this Addendum, the parties seek to amend the Agreement as set forth herein this Addendum as if such documents were originally and fully incorporated in the Agreement.

> The Effective Date is and remains March 19, 2010.

> The Effective Period of the Agreement, **ARTICLE 1**, is replaced in its entirety with the following:

> **ARTICLE 1.0 EFFECTIVE PERIOD.   This Agreement is effective commencing on the Effective Date, and shall continue in full force and effect for ten (10) years unless terminated by Contractor or Subcontractor as provided in ARTICLE 7.0 or ARTICLE 8.0 (the "Effective Period")…."**

(**Exhibit F**, Addendum to MSA, emphasis in original).

49.     The Addendum to MSA reflects the intent and conduct of Richmond and Fusion in their continued operation under and enforcement of the MSA.

50.     Exhibit A to the Addendum to MSA identifies Richmond (as "Richmond American Homes of Utah, Inc.") as one of the RAH Operating Entities to the Addendum to MSA.  (**Exhibit F**).

51.     As reflected in **Exhibit C**, on December 9, 2015, Ms. Kovacs wrote Mr. Meyer, of Allianz, identifying that Richmond relied upon the representations, proposals, and recommendation of Mr. Meyer from his November 13, 2015 written correspondence to Ms. Kovacs, when Ms. Kovacs wrote:

> "Fusion and RAH [Richmond] executed an addendum (see attached) confirming the intention of the parties.  Please accept RAH's [Richmond's] tender of defense in this matter."

52.     As reflected in **Exhibit C**, on December 29, 2015, Ms. Kovacs again wrote Mr. Meyer, of Allianz, asking:

> "Good Afternoon Rick,
> Can you confirm acceptance of RAH [Richmond] tender of defense?"

53.     Having received no response from Fusion or Allianz to the prior tender letter, Richmond then sent a follow up letter dated January 27, 2016 to Allianz and Fusion concerning its prior tender.  This January 27, 2016 letter again demanded that Fusion and its insurers,

including Allianz, immediately accept the tender.  A copy of this January 27, 2016 letter is attached as **Exhibit G**.

54.      On February 11, 2016, Allianz responded for the first time to Richmond's prior tenders.  A copy of this February 11, 2016 letter from Allianz is attached as **Exhibit H**.

55.      In Allianz's February 11, 2016 letter to Richmond, Allianz denied Richmond's tender of defense and indemnification as to Plaintiff Aguilar's claims.  The February 11, 2016 included the following:

> "…American [Allianz] has concluded that it has no duty to defend or indemnify RAH of Utah [Richmond] in the *Aguilar* Action.  Because the 'bodily injury' occurred after expiration of the original Master Subcontractor Agreement ("MSA"), and before execution of the Addendum, the required conditions of the blanket additional insured endorsement ("AIE") contained in the MultiCover form of the Policy have not been met….
>
> At the time of the accident the MSA was not in effect.  Thus, Fusion did not agree in a written "insured contract" to name any entity as an additional insured.  American [Allianz] thus has no obligation to defend RAH of Utah [Richmond] based upon the terms of the original MSA…."

**(Exhibit H)**.

56.      The February 11, 2016 letter from Allianz to Richmond, wherein Allianz denied Richmond's tender, is signed "for Richard J. Meyer."

57.      Richmond incurred damages, including but not limited to costs, expenses, and attorneys fees, concerning Plaintiff Aguilar's initial Complaint, based upon Allianz's denial of Richmond's multiple tenders for defense and indemnification.

58.      Plaintiffs in the Underlying Litigation filed a subsequent Complaint against Richmond (and, this time, Fusion), which subsequent Complaint also identified Plaintiff Aguilar's wife, Maria Elena Cirilo, as a Plaintiff in the lawsuit.  This subsequent lawsuit is still

pending and has been filed under Civil No. 170903060, Third District Court, Salt Lake County, State of Utah.  A copy of this Complaint is attached as **Exhibit A**.

59.     Richmond sent a letter dated May 19, 2017 to Allianz, wherein Richmond tendered Richmond's defense and indemnification to Allianz, as set forth more fully therein.  A copy of this tender letter of May 19, 2017 is attached hereto as **Exhibit I**.

60.     Allianz responded to Richmond's tender letter of May 19, 2017, by Allianz's letter dated June 8, 2017.  A copy of Allianz's letter dated June 8, 2017 is attached hereto as **Exhibit J**.

61.     Allianz's response to Richmond's tender is as set forth more fully in Allianz's June 8, 2017, **Exhibit J**, but includes the following:

> "…American [Allianz] has concluded that it has no duty to defend or indemnify RAH of Utah [Richmond] in the *Aguilar* Action.  Because the 'bodily injury' occurred after expiration of the original Master Subcontractor Agreement ("MSA"), and before execution of the Addendum, the required conditions of the blanket additional insured endorsement ("AIE") contained in the MultiCover form of the Policy have not been met….
>
> Notwithstanding American's [Allianz's] lack of obligation to defend or indemnify RAH of Utah [Richmond] as an additional insured under the Policy, American [Allianz] offers to defend RAH of Utah [Richmond] as a potential indemnitee of Fusion under the conditions set forth in this letter….
>
> At the time of the accident the MSA was not in effect.  Thus, Fusion did not agree in a written "insured contract" to name any entity as an additional insured. American [Allianz] thus has no obligation to defend RAH of Utah [Richmond] based upon the terms of the original MSA…."

62.     Allianz's June 8, 2017 letter, **Exhibit J**, also identified that it would only "provide a **defense** to RAH of Utah [Richmond], as a **potential** indemnitee of Fusion" subject to several conditions.  (**Exhibit J**, emphasis in the original).  Those conditions included: Richmond and Fusion would be represented by Fusion's current counsel; Richmond and Fusion would sign any

conflict waivers required by Fusion's current counsel; and that Richmond "would not file a cross-complaint or other similar pleading/action against Fusion in the *Aguilar* Action…." Moreover, the June 8, 2017 letter also stated that American/Allianz "will not indemnify RAH of Utah [Richmond] if Plaintiff [Aguilar] is determined to be an employee of Fusion…."

63.     Despite knowing that the MSA required Fusion to maintain commercial general liability with Richmond identified as an additional insured while the parties operated under the MSA or until at least 2020 (per the March 19, 2010 MSA), and despite knowing that its Policy required only that the bodily injury be subsequent to the execution of the MSA, Allianz willfully and unreasonably denied Richmond's tenders "[b]ecause the 'bodily injury' occurred after expiration of the original Master Subcontractor Agreement ("MSA")," and because "Fusion did not agree in a written 'insured contract' to name any entity as an additional insured." (**Exhibits H**, **J**, Correspondence from Allianz).

64.     Despite knowing that the Policy exclusion entitled "Employer's Liability," (Coverage A, Exclusion e) "does not apply to liability assumed by the insured under an **insured contract**" per the Policy language, Allianz unreasonably and willfully relied upon said exclusion to improperly deny coverage to Richmond.  According to Allianz, it "will not defend RAH of Utah [Richmond] if Plaintiff is determined to be an employee of Fusion, as alleged in the Complaint, because the Policy specifically excludes coverage for 'bodily injury' to Fusion's employees arising out of and in the course of their employment, or while performing duties related to the conduct of Fusion's business. (Coverage A, Exclusion e.)"   (**Exhibit J**, June 8, 2017 Correspondence from Allianz).

65.     Allianz was and is obligated to defend and indemnify Richmond against the claims made in Mr. Aguilar's original Complaint (**Exhibit A**) and the Underlying Litigation (**Exhibit A**).

66.     Allianz has waived and is estopped from asserting defenses under the contracts, based upon Allianz's conduct, representations, proposals, and recommendations as outlined above, including but not limited to its conduct and recommendation relative to the Addendum to MSA.  In addition, and to the extent Allianz is treating its insureds Fusion and Richmond differently and selectively applying policy provisions, Allianz has also waived and is estopped from relying on said provisions.

67.     Richmond incurred, and continues to incur, damages, including but not limited to costs, expenses, and attorneys' fees, relative to Plaintiff Aguilar's original Complaint the pending Underlying Litigation (including defense of claims and Cross-Claim against Fusion therein), and those expenses incurred in prosecuting the case *sub judice*, due to Allianz's conduct including but not limited to unreasonable response to Richmond's tenders, Allianz's breaches of contract, breaches of duties (including breaches of contractual and extra-contractual duties), and misrepresentations.

68.     Allianz's unreasonable conduct, unreasonable delay and denial, and the conduct identified above, was and is willful and malicious conduct, or conduct that manifests a knowing and reckless indifference toward, and a disregard of, the rights of others, entitling Richmond to punitive damages.

### FIRST CAUSE OF ACTION AGAINST ALLIANZ:
### <u>BREACH OF CONTRACT</u>

69.     Richmond hereby incorporates herein the allegations set forth above.

70.     Richmond was an insured under the Policy and The Fund Umbrella.

71.     Ambiguous provisions in the Policy and The Fund Umbrella must be interpreted in favor of coverage.

72.     Allianz was and is obligated to defend and indemnify Richmond against Plaintiff Aguilar's original Complaint and the pending Underlying Litigation.

73.     Richmond is entitled to defense and indemnification under the Policy and the March 19, 2010 MSA, without reference to the Addendum to MSA.

74.     Richmond is also entitled to defense and indemnification under the subject contracts, including the Policy, The Fund Umbrella, MSA, and Addendum to MSA, as well as also based upon the conduct of Allianz, which includes its conduct, representation, and recommendation relative to the Addendum to MSA.  Based thereon, Richmond contends that it is also entitled to reimbursement for defense expenses incurred to date and expenses that continue to be incurred.

75.     Allianz breached its contracts by refusing to fully defend and indemnify Richmond against Plaintiff Aguilar's original Complaint and the pending Underlying Litigation.

76.     Allianz waived defenses or is estopped from asserting defenses under the contracts with or involving Richmond, based upon Allianz's conduct, representations, and recommendations as outlined above, including its conduct and recommendation relative to the Addendum to MSA.

77.     As a direct and foreseeable result of Allianz's breaches, Richmond has sustained, does sustain, and will sustain damages, including litigation expenses, costs, attorneys' fees, and other damages, and has been exposed to judgments.

**SECOND CAUSE OF ACTION AGAINST ALLIANZ:**
**BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING**

78.     Richmond hereby incorporates herein the allegations set forth above.

79.     The contracts issued by Allianz, including the Policy and the Fund Umbrella, include Allianz' duty of good faith and fair dealing.  This means that Allianz must act in good faith and deal fairly with its insured.

80.     Richmond's claims for third-party liability policy benefits imposes upon Allianz a fiduciary duty, which means that Allianz must act for the benefit of the insured. The fiduciary duty requires Allianz to act in good faith and give at least as much consideration to protecting the interests of its insured as it would in protecting its own interests.

81.     Richmond depended on Allianz to adhere to its obligations and duties, including but not limited to the obligations under the Policy and The Fund Umbrella, and those obligations based upon the conduct, representations, and recommendations of Allianz relative to the Addendum to MSA.

82.     Allianz's breaches of its duties of good faith and fair dealing include, but are not limited to, its unreasonable delays and denials, refusal to fully defend and indemnify Richmond, and Allianz's other unreasonable conduct including its bad faith offer to comply with its contractual obligations only if Richmond waived its rights, and its representations, proposals, and recommendations regarding the Addendum to MSA and subsequent denials.

83.     Allianz waived defenses or is estopped from asserting defenses under the contracts and duties with or involving Richmond, based upon Allianz's conduct, representations, and recommendations as outlined above, including its conduct and recommendation relative to the Addendum to MSA.

84.     As a direct and foreseeable result of Allianz's breach, Richmond has sustained, does sustain, and will sustain damages, including but not limited to litigation expenses, costs, attorneys' fees, and other damages, and has been exposed to judgments, all in an amount to be proven at trial.

### THIRD CAUSE OF ACTION AGAINST ALLIANZ: INDEMNIFICATION – EXPRESS AND IMPLIED

85.     Richmond hereby incorporates herein the allegations set forth above.

86.     Richmond has timely tendered, multiple times, Plaintiffs Aguilar and Cirilo's claims to Allianz.

87.     Richmond is contractually and/or equitably entitled to be defended and indemnified by Allianz against all losses, costs, damages, and liabilities that may arise or be found in favor of Plaintiffs Aguilar and Cirilo, including but not limited to under the Policy, The Fund Umbrella, MSA, and Addendum to MSA, as well as based upon Allianz's conduct concerning the same.

88.     Allianz waived defenses or is estopped from asserting defenses under the contracts and duties with or involving Richmond, based upon Allianz's conduct, representations, and recommendations as outlined above, including its conduct and recommendation relative to the Addendum to MSA.

89.     Richmond is entitled, under contracts and/or under equitable principles of indemnity, to seek and obtain this Court's order requiring Allianz to defend, indemnify, and otherwise hold Richmond harmless from Plaintiffs Aguilar and Cirilo's claims, including but not limited to payment for past defense expenses, attorneys' fees, and costs incurred, and that continue to be incurred.

90.     Allianz waived defenses or is estopped from asserting defenses under the contracts and duties with or involving Richmond, based upon Allianz's conduct, representations, and recommendations as outlined above, including its conduct and recommendation relative to the Addendum to MSA.

## FOURTH CAUSE OF ACTION AGAINST ALLIANZ:
### DECLARATORY RELIEF

91.     Richmond hereby incorporates herein the allegations set forth above.

92.     A dispute has arisen between Richmond and Allianz concerning rights and duties under contracts and the conduct of Allianz.

93.     Richmond requests this Court's order declaring and decreeing that it is entitled to a defense and indemnification under the subject contracts and/or conduct of Allianz, and awarding Richmond with all damages reasonably incurred as a result of Allianz's failure to defend and/or indemnify.

## FIFTH CAUSE OF ACTION AGAINST ALLIANZ:
### NEGLIGENT MISREPRESENTATION

94.     Richmond hereby incorporates herein the allegations set forth above.

95.     As outlined above, Allianz carelessly, falsely, or negligently made misrepresentations and false or misleading recommendations to Richmond concerning the Policy, the MSA and the Addendum to MSA, including the Addendum to MSA being retroactive to reflect the intent of the parties, including as outlined in the November 13, 2015 correspondence from Rick Meyer of Allianz.  Allianz expected Richmond to rely and act on such representations and recommendations.

96.     Allianz negligently misrepresented its own Policy provisions and the provisions the March 19, 2010 MSA, by stating the Policy does not apply to the March 19, 2010 MSA, and that Richmond's claims are excluded by Exclusion e, and as otherwise stated above.

97.     Upon inducement from Allianz, Richmond relied and acted upon the misrepresentations and false or misleading recommendations of Allianz, by executing the Addendum to MSA in seeking defense and indemnification of Richmond as to Plaintiffs Aguilar and Cirilo's claims.

98.     Allianz's representations and recommendations were negligent, false, and careless because Allianz refused to fully defend and indemnify Richmond, including under the Policy, The Fund Umbrella, the MSA, and the Addendum to MSA, as to Plaintiffs Aguilar and Cirilo's claims, as stated in Allianz's responses to Richmond's tenders, as set forth above.  These responses include, but are not limited to, Allianz's statements in its June 8, 2017 letter.

99.     Richmond suffered and continues to suffer a loss, including damages, based upon Allianz's failure to comply with its representations and recommendations to Richmond, and Richmond suffered and continues to suffer a loss, including damages, based upon Richmond's reliance on Allianz's negligence and careless misrepresentations and recommendations.

## SIXTH CAUSE OF ACTION AGAINST ALLIANZ:
## INTENTIONAL MISREPRESENTATION

100.     Richmond hereby incorporates herein the allegations set forth above.

101.     As outlined above, Allianz made intentional misrepresentations and false or misleading recommendations, or representations which were made knowingly or recklessly.

102.     Allianz intentionally misrepresented its own Policy provisions and the provisions the March 19, 2010 MSA, by stating the Policy does not apply to the March 19, 2010 MSA, and

that Richmond's claims are excluded by Exclusion e, and as otherwise stated above.  To the extent that Allianz's statements after issuance of the Policy are true, the Policy itself then in a false statement and representation by Allianz.

103.    Allianz's recommendations regarding the Addendum to MSA were intentionally made, and Allianz knew that it would deny coverage after Richmond and Fusion entered the Addendum.

104.    Allianz's statements regarding its Policy provisions and the March 19, 2010 MSA, and its statements and recommendations regarding the Addendum to MSA, were recklessly made by Allianz who had knew or should have known it had insufficient knowledge on which to base such statements, representations and recommendations to Richmond.

105.    Allianz expected Richmond to rely and act on such representations and recommendations.

106.    Upon inducement from Allianz, Richmond relied upon the intentional, false, and misleading representations and recommendations to its detriment.

107.    At the time that Richmond acted and relied upon Allianz's representations and recommendations, Richmond did not know that those representations were false or made recklessly by Allianz.

108.    Allianz's intentional misrepresentations and recommendations were false or misleading because Allianz refused to fully defend and indemnify Richmond including under the Policy, the MSA, the Addendum to MSA, and/or the Fund Umbrella, as to Plaintiffs Aguilar and Cirilo's claims, as stated in Allianz's responses to Richmond's tenders, as set forth above.  These responses include, but are not limited to, Allianz's statement in its June 8, 2017 letter to

Richmond, wherein Allianz stated that the "Addendum [to the MSA] cannot retroactively create a coverage obligation for American [Allianz] with respect to the *Aguilar* Action…. For this reason, the Addendum does not obligate American to defend RAH of Utah [Richmond] in the *Aguilar* action."

109.    Rather than accepting Richmond's tender for full defense and indemnification under the Policy, MSA, and/or the Addendum (which was entered into as set forth above), Allianz's June 8, 2017 letter also identified that it would only "provide a **defense** to RAH of Utah [Richmond], as a **potential** indemnitee of Fusion" subject to several conditions.  (**Exhibit J**, emphasis in the original).   Those conditions included: Richmond and Fusion would be represented by Fusion's current counsel; Richmond and Fusion would sign any conflict waivers required by Fusion's current counsel; and that Richmond "would not file a cross-complaint or other similar pleading/action against Fusion in the *Aguilar* Action…."

110.    Moreover, the June 8, 2017 letter also stated that American/Allianz "will not indemnify RAH of Utah [Richmond] if Plaintiff [Aguilar] is determined to be an employee of Fusion…." This is another intentional false representation of Policy provisions made by Allianz.

111.    Richmond suffered and continues to suffer a loss, including damages, based upon Allianz's intentional misrepresentations and false or misleading statements and recommendations to Richmond.

### SEVENTH CAUSE OF ACTION AGAINST ALLIANZE:
### FRAUDULENT MISREPRESENTATION

112.    Richmond hereby incorporates herein the allegations set forth above.

113.    As outlined above, Allianz made intentional and fraudulent misrepresentations and false or misleading recommendations, or representations which were made recklessly

knowing that it had insufficient knowledge on which to base such representations and recommendations, to Richmond concerning the Policy, the MSA and the Addendum to MSA, including the Addendum to MSA being retroactive to reflect the intent of the parties, including as outlined in the November 13, 2015 correspondence from Rick Meyer of Allianz. Allianz expected Richmond to rely and act on such representations and recommendations.

114. Allianz fraudulently misrepresented its own Policy provisions and the provisions the March 19, 2010 MSA, by stating the Policy does not apply to the March 19, 2010 MSA, and that Richmond's claims are excluded by Exclusion e, and as otherwise stated above. To the extent that Allianz's statements after issuance of the Policy are true, the Policy itself then in a false statement and representation by Allianz.

115. Upon inducement from Allianz, Richmond relied and acted upon the intentional and fraudulent misrepresentations and false or misleading recommendations of Allianz, by relaying on the coverage afforded by the language of the Policy, and/or by executing the Addendum to MSA. At that time that Richmond acted and relied upon Allianz's representations and recommendations, Richmond did not know that those representations were fraudulent, false or made recklessly by Allianz.

116. Allianz's intentional and fraudulent misrepresentations and recommendations were false or misleading because Allianz refused to fully defend and indemnify Richmond, including under the Policy, the MSA, and the Addendum to MSA, as to Plaintiffs Aguilar and Cirilo's claims, as stated in Allianz's responses to Richmond's tenders, as set forth above. These responses include, but are not limited to, Allianz's statement in its June 8, 2017 letter to Richmond, wherein Allianz stated that the "Addendum [to the MSA] cannot retroactively create

a coverage obligation for American [Allianz] with respect to the *Aguilar* Action…. For this reason, the Addendum does not obligate American to defend RAH of Utah [Richmond] in the *Aguilar* action."

117.     Rather than accepting Richmond's tender for full defense and indemnification under the Policy, MSA, and/or the Addendum (which was entered into as set forth above), in its June 8, 2017 letter Allianz fraudulently offered to comply with its contractual obligations only if Richmond waived its rights. Specifically, Allianz stated it would "provide a **defense** to RAH of Utah [Richmond], as a **potential** indemnitee of Fusion" only if Richmond and Fusion would be represented by Fusion's current counsel; Richmond and Fusion would sign any conflict waivers required by Fusion's current counsel; and that Richmond "would not file a cross-complaint or other similar pleading/action against Fusion in the *Aguilar* Action…." Moreover, the June 8, 2017 letter also fraudulently stated that American/Allianz "will not indemnify RAH of Utah [Richmond] if Plaintiff [Aguilar] is determined to be an employee of Fusion…."

118.     Richmond suffered and continues to suffer a loss, including damages, based upon Allianz's intentional and fraudulent misrepresentations.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Richmond prays for judgment against Defendant Allianz as follows:

1.     For damages, if any, awarded in favor of Plaintiffs Aguilar and Cirilo against Richmond;

2.     For complete defense and indemnification, past, present and future, against any and all claims made by Plaintiffs Aguilar and/or Cirilo, individually or collectively, against Richmond;

3.     For consequential, compensatory and incidental damages;

4.     For Richmond's attorneys fees, including fees in defense of Plaintiff Aguilar's original Complaint and the pending Underlying Litigation, fees incurred in Richmond's Cross-Claim against Fusion therein, and fees incurred in prosecuting claims against Allianz;

5.     For all costs and expenses incurred by Richmond in all of the above;

6.     For punitive damages;

7.     For judgment against Defendant Allianz and in favor of Plaintiff Richmond, declaring and decreeing that Richmond is entitled to defense and indemnification from Allianz, and awarding Richmond all damages reasonably incurred by Richmond as a result of Allianz's failure to defend and/or indemnify;

8.     For judgment against Allianz and in favor of Richmond for compensatory damages that Richmond has incurred or will likely incur as caused by Allianz;

9.     For equitable relief in Richmond's favor as appropriate under the circumstances, including but not limited to reformation of any and all contracts or agreements between Richmond and Fusion; Richmond and Allianz; and/or Allianz and Fusion;

10.    For a determination and award of all damages suffered by Richmond because of Allianz;

11.    For a determination of rights, status, and other legal relations between the parties;

12.     For a decree to determine what equities need to be considered and implemented to cause fairness to Richmond;

13.     For interest at the maximum rate as permitted by law; and

14.     For such other further relief as the court deems just.

**<u>JURY DEMAND</u>**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Richmond demands a jury on all triable issues pertaining to this First Amended Complaint.

DATED this 7th day of September, 2018.

DEWHIRST & DOLVEN, LLC


By*/s/ Rick N. Haderlie*
Rick N. Haderlie, Esq.
Kyle L. Shoop, Esq.
Clayton M. Firth, Esq.
Dewhirst & Dolven, LLC
4179 Riverboat Road, Ste. 206
Salt Lake City, UT 84123
Phone: (801) 274-2717
Facsimile: (801) 274-0170
Email: rhaderlie@dewhirstdolven.com
Email: kshoop@dewhirstdolven.com
Email: cfirth@dewhirstdolven.com

Attorneys for Plaintiff,
Richmond American Homes of Utah, Inc.